United States District Court
Eastern District of Texas
Plano Division

**BENJAMIN WASHINGTON**,
84 Bannon St.
Torrington, CT 06798
**Plaintiff, Pro Se**

v.

**BECKETT COLLECTIBLES, LLC**,
2700 Summit Ave, Ste 100
Plano, TX 75074
**Defendant.**



Civil Action No: 4:25cv623 RWS/ BB

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, **Benjamin Washington**, proceeding pro se, files this Complaint against **Beckett Collectibles, LLC** ("Beckett" or "Defendant") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to **28 U.S.C. § 1332** as there is complete diversity of citizenship between Plaintiff (a citizen of Connecticut) and Defendant (a Texas company), and the amount in controversy exceeds **$75,000**.
2. 1332(a) says federal courts have jurisdiction when the parties are from different states and the amount in controversy exceeds $75,000.
3. Venue is proper in this district under **28 U.S.C. § 1391(b)** because Defendant is headquartered in this District and a substantial part of the events giving rise to this action occurred here.

## II. PARTIES

3. Plaintiff **Benjamin Washington** is an individual residing in Torrington, Connecticut.
4. Defendant **Beckett Collectibles, LLC** is a limited liability company organized under the laws of Texas with its principal place of business in Plano, Texas. Beckett engages in nationwide services involving grading and authentication of collectible sports cards.

## III. FACTUAL ALLEGATIONS

5. In 2013, Plaintiff submitted a rare **T206 Honus Wagner** baseball card to Beckett for grading and authentication services.
6. Beckett confirmed receipt of the card and internally marked it as "**deemed authentic**," but Plaintiff received no notification of the card's return, shipment, or grading outcome.

7. At the time, Plaintiff was a first-time customer and had no reason to question Beckett's silence. Plaintiff assumed that the card had been found inauthentic and that no further communication was standard.
8. Over the next **11 years**, Plaintiff had no communication with Beckett regarding the card and never received it back.
9. Beckett cannot produce any credible or verifiable evidence demonstrating that either party engaged in communication over the past 11 years regarding the Plaintiff's T206 Honus Wagner card. As such, the Plaintiff's recent discovery of the card's status constitutes the earliest possible point of awareness. Any purported evidence of communication produced by Beckett would be highly suspect, particularly given that the card's authenticity designation was only changed only after public scrutiny persisted for approximately two weeks.
10. Defendant cannot claim any statute of limitations defense or argue that Plaintiff's claims are untimely, as Defendant failed to provide any notification, communication, or return of the card for over a decade, effectively concealing the matter until May 2025
11. Concealment and Tolling of Limitations: Due to Defendant's failure to provide any notification, communication, or return of the card over the course of more than eleven years, Defendant is estopped from asserting any statute of limitations defense. Defendant's prolonged concealment and failure to respond tolled any applicable limitations period until Plaintiff's recent discovery in May 2025.
12. At no time did Plaintiff waive any rights, consent to the loss, or agree to any delay or misrepresentation. Plaintiff's silence resulted from Beckett's failure to notify or engage, and cannot be construed as acceptance or abandonment."
13. Plaintiff's discovery of the card's authenticated status on May 5, 2025, is the triggering event for the statute of limitations under the "discovery rule", as Plaintiff had no prior knowledge or reason to believe the card was authentic or improperly retained. Reference Exhibit B
14. In 2021, a T206 Honus Wagner card—graded by SGC—suddenly appeared publicly and was valued at approximately $25 million. The individual who "found" the card admitted that it had no known provenance and stated publicly that it had "appeared out of thin air."Plaintiff believes this card could plausibly be the same card submitted in 2013, especially given Beckett's lack of records and the card's unexplained emergence nearly a decade later.
15. • In **May 2025**, Plaintiff logged into the Beckett platform for the first time in over a decade and discovered that the card had been **marked as authenticated**, and was apparently **never graded** or properly returned. Reference Exhibit A. A1 and A2
16. • Plaintiff contacted Beckett on **May 5, 2025**, requesting documentation. Beckett's system listed conflicting receipt dates of **October 10 and October 11, 2013**.
17. • Beckett claimed the card was shipped via FedEx on **October 15, 2013**, under tracking number **580351437384**, but FedEx confirmed that **no such tracking number exists** in their system. Which Beckett confirms in Exhibit B
18. • Beckett failed to produce **proof of shipment**, delivery confirmation, or any documentation demonstrating that the card ever left their possession.
19. • On **May 6, 2025**, Beckett's customer service acknowledged receipt of the order but could not confirm shipment or provide any resolution, citing the age of the matter. Reference Exhibit B

20. • Plaintiff followed up multiple times, but received **contradictory responses** and was ultimately ignored. Reference Exhibit C
21. Following Plaintiff's public inquiry and challenge regarding the card's status, Defendant altered or removed key information related to the card's authenticity and shipment records within two weeks, evidencing spoliation of evidence to hinder Plaintiff's ability to prove ownership and authenticity."
22. • Beckett failed to escalate the matter or engage a legal representative, despite the card's **historic rarity and multimillion-dollar value**. Beckett's failure to return the card, combined with its authenticated status in their system and lack of shipping records, constitutes a clear case of conversion. Reference Exhibit C and D
23. • Beginning May 6, 2025, Plaintiff launched a **public outreach campaign** on social media platforms, posting over **500 tweets, 70 TikTok videos, 56 YouTube videos 30k total combined views**, and multilingual posts tagging Beckett and major collectors. (Up to date is there are over 950 tweets and over 100k total TikTok and YouTube views) For all tweets and videos please refer to X handle is  @jointhewish (to be referred to as. Exhibit x) TikTok handle @jointhewish (to be referred to as Exhibit y) YouTube handle @BenjaminEl_EE (to be referred to as Exhibit z) Reference Exhibit E (more details by social media handles Exhibits X,Y and Z as stated above. Some video examples below, subject details include initial call out to Beckett, a video of using Becketts website which was video taped by a 3rd party with no allegiance to either party, showing inconsistent dates, deemed authentic. Another explaining that he contacted the Texas Attorney General, FTC and IC3. Another calling out Beckett for Spoliation of evidence. To not overwhelm the court with evidence of Becketts silence during publicly documented timeline the Plaintiff has shown only a tiny example of all public claims
https://youtube.com/shorts/nfAcQ-0o7Ts?si=8XlOF0ftWbByf9jn
https://youtube.com/shorts/MLUg7bbrAKI?si=x8Vhje42obXy119R
https://www.tiktok.com/t/ZP8M589eS/
https://x.com/JoinTheWish/status/1920567609256280240?t=nQWtFLb-liQZnqBq8Z_hYQ&s=19
https://x.com/JoinTheWish/status/1925538767026159888?t=r5LYXVl_o2QJVljSxwPvOg&s=19
https://x.com/JoinTheWish/status/1920667694837239980?t=JdUTSY7wWUrUmRrvL3Sz5g&s=19
https://x.com/JoinTheWish/status/1920672964518789190?t=738Y3PpRp79fjKAUb6c_gg&s=19
https://x.com/JoinTheWish/status/1925514539698737348?t=Q6iT4KAvX2inZVY_Evbycw&s=19  and Exhibit F and Exhibit G (Plaintiff top Google search, also can be found tagged in Plaintiff social media handles)
24. • Plaintiff invited open scrutiny by offering access to his account to influencers or anyone , and challenged Beckett to pursue legal action if his claims were untrue.
25. • Beckett's legal counsel issued a bare assertion that the card was 'inauthentic' without any supporting analysis, expert report, or contemporaneous record. This conclusory statement contradicts their own internal designation of 'deemed authentic.'" Reference Exhibit H
26. • On **May 21, 2025**, Plaintiff observed changes in Beckett's app records—including the **removal of "deemed authentic"** from the card's status—suggesting **tampering with**

     **digital evidence** after the public campaign began. Reference Exhibit I. The plaintiff posted this evidence change when it happened, May 21, 2025. Publicly tagging Beckett and asking why change the evidence now when the public timeline has been set for weeks. (Reference Exhibits X,Y,Z)

27. • Plaintiff recorded these discrepancies and issued a **litigation hold and spoliation notice** to Beckett's legal counsel and a named employee, requesting preservation of all relevant documents. Reference Exhibit J and Exhibit K and Exhibit S
28. • Beckett **did not respond** to the preservation notice.
29. • Beckett's population report shows only **one T206 Honus Wagner card** authenticated, and no record of Plaintiff's submission ever being publicly acknowledged, despite the significance such a card would hold. Reference Exhibit A, A1 and A2 and X,Y,Z
30. • If Beckett had provided notice or any public acknowledgment of the card, Plaintiff would have discovered the situation earlier. Beckett's **failure to inform**, **alteration of records**, and **refusal to engage** constitute a pattern of **concealment and bad faith**.
31. Collectively, these facts demonstrate Beckett's gross mishandling, failure to maintain chain of custody, possible spoliation of evidence, and a deliberate pattern of concealment—causing substantial and irreparable harm to Plaintiff.
32. Defendant's Silence and Failure to Respond Evidence Bad Faith"Plaintiff has publicly documented the alleged misconduct (dates, posts, evidence), and Defendant has had repeated opportunities to respond or deny. (Reference Exhibits X,Y,Z)
33. Defendant's refusal or failure to address these allegations publicly or privately, despite notice, supports an inference of bad faith and intentional wrongdoing. Reference Exhibits X,Y,Z
34. This silence reinforces the legitimacy of Plaintiff's claims and supports sanctions or adverse inference. Reference Exhibits X,Y,Z
35. Becketts app also has contradictory statements as well. Card was given a serial number with no grade? This is raises red flags as is not within industry norm. Reference Exhibit L. Becketts own website has customers asking the same questions, and how their cards were never returned. Beckett remains silent. Reference Exhibit M and N.
36. Becketts app also states that the Plaintiff card is status was "moved to repository" Reference Exhibit 0, P and Q.
37. When using Becketts app and clicking the tracking number a pop up screen comes up saying "no tracking information available currently" Reference Exhibit R
38. Should Defendant fail to timely respond to this Complaint or produce credible and verifiable evidence supporting its defenses during discovery, Plaintiff will seek entry of default judgment due to Defendant's failure to adequately contest the claims and due to spoliation of evidence.

**Pattern of Misconduct and Negligence**

39. Plaintiff's experience appears consistent with other customer reports of poor recordkeeping and lack of accountability by Beckett. This supports Plaintiff's claim of systemic negligence or recklessness.

**SPOLIATION OF EVIDENCE**

39. Plaintiff issued a litigation hold and preservation notice on May 21, 2025.

40.. Beckett ignored this notice and modified or deleted digital records.

41. Beckett's failure to preserve evidence prejudiced Plaintiff's ability to prove his claims.

42. Plaintiff seeks an adverse inference, sanctions, and other remedies available under law.

43. Because Beckett lost the Plaintiff card before grading and took no photos or documentation to preserve its condition, they have forfeited their ability to argue it was of lower value. The burden of uncertainty should fall on the party who destroyed or lost the evidence — not the victim

44. . Defendant failed to preserve or produce key evidence related to the grading, authentication, and shipment of Plaintiff's T206 Honus Wagner card. This includes the absence of credible shipment records, contradictory internal documentation, and delayed or altered status updates following public scrutiny. Such conduct impairs Plaintiff's ability to prove the facts and suggests Defendant acted in bad faith.

### No Verifiable Shipment or Delivery Record Exists

45. Defendant has failed to produce any signed proof of delivery or verifiable shipment record. Under established legal principles, failure to demonstrate custody transfer is dispositive of liability."

CAUSES OF ACTION

**46. Defendant's User Agreement Does Not Shield Intentional Misconduct"**

- While Defendant may rely on disclaimers or limitations of liability in their user agreement, such contractual provisions generally do **not** protect them from **intentional acts of fraud, spoliation, or bad faith concealment**.
- Courts routinely hold that disclaimers cannot shield parties from **willful misconduct or fraud**.
- Therefore, Defendant's contractual defenses are insufficient to bar Plaintiff's claims arising from deliberate misconduct.

**Defendant's Failure to Timely Respond and Default**

47. Defendant has failed to timely respond to Plaintiff's demands and has ignored multiple communications, including certified mail, despite being informed of Plaintiff's intent to proceed pro se. Should Defendant fail to timely respond to this Complaint or produce.
48. credible and verifiable evidence supporting its defenses during discovery, Plaintiff will seek entry of default judgment due to Defendant's failure to adequately contest the claims and due to spoliation of evidence.

**Statute of Limitations Tolling Due to Fraudulent Concealment**

49. Beckett's misrepresentation and failure to disclose material facts constituted fraudulent concealment. Plaintiff only became aware of the card's disposition in May 2025. Accordingly, the statute of limitations is tolled under the doctrine of fraudulent concealment

**Defendant's Implausible Defenses**

50. Any defense offered by Defendant is implausible in light of the contradictory evidence, including Defendant's own admissions that shipment records do not exist and the card's status was altered only after public exposure. Defendant's inconsistent and evasive conduct undermines the credibility of any defense and supports judgment in favor of Plaintiff.

Beckett's Claims vs. the Evidence

51.     Beckett claims that too much time has passed since the Plaintiff submitted the T206 Honus Wagner card in 2013. However, this defense fails to consider that this was the Plaintiff's first-ever card submission. The Plaintiff lacked industry knowledge at the time and reasonably believed that no response or return indicated the card was inauthentic — a standard expectation for new submitters when no grading results are received. It is unreasonable to expect a novice submitter to possess industry-specific knowledge or familiarity with grading protocols when no receipt or results are provided."

52. Lack of Transparency About a Historic CardBeckett never publicly disclosed possession of a T206 Honus Wagner — one of the rarest and most valuable cards in the world. Notably, only **36 exist in PSA's population report, 17 in SGC's**, and **1 in Beckett's**, according to current population reports. A newly discovered or authenticated Honus Wagner typically garners national media coverage, such as a **New York Times article on May 29, 2025**. Beckett never issued such a public notice. Given the historic significance of a T206 Honus Wagner card, any authentication would typically prompt immediate internal or external communication. Beckett's silence is abnormal and suspicious."

53. Timeline Begins at Discovery — Not Submission

54. The Plaintiff discovered on **May 5, 2025**, that Beckett had recorded the card as "deemed authentic" on its internal system and website — **contradicting its attorney's claim** that the card was inauthentic. Under the **discovery rule**, the limitations period should start when the Plaintiff **first became aware of the authenticity status** — not the 2013 submission date. There is no evidence the Plaintiff was notified of the card's status before this date

55. If the Plaintiff had contacted Beckett in the past 11 years about the t206 Honus Wagner, the defendant would be able to produce this evidence. Under the 'discovery rule,' the statute of limitations does not begin to run until the Plaintiff knew, or reasonably should have known, of the injury and its cause."

56. Beckett's Lack of Notification
The Plaintiff received no communication from Beckett — neither a grading report nor an authenticity notice. This suggests intentional concealment or gross mishandling, especially considering the card's extraordinary value. A reasonable person could infer this concealment was strategic, designed to exploit an inexperienced customer.

57. Limited Prior Use of Beckett's Services

The Plaintiff has **not submitted additional orders** with Beckett except for one other submission in 2014. Had the Plaintiff known the Honus Wagner was authentic or still in Beckett's possession, legal action or inquiries would have followed years ago.

**58.**     Burden of Proof on Beckett

Beckett asserts the Plaintiff did not inquire about the card over the past 11 years. However, **if any such communication had occurred**, Beckett would possess those records. None have been produced. The Plaintiff's first confirmed inquiry occurred in **2025**.

**59.**     Inconsistent Website Information

Until public scrutiny began, Beckett's website still listed the Honus Wagner card as **"Deemed Authentic"** — contradicting its legal claim that it was "deemed inauthentic." This record remained **unchanged for over 11 years**, undermining their defense.

Shipping Discrepancies

**60.** Invalid Tracking Number

Beckett claims the card was returned via FedEx with tracking number 580351437384, but FedEx has no record of this number — not even as a created label. A FedEx representative confirmed this tracking number does not exist in their system, strongly suggesting no shipment occurred. The inability to verify the tracking number suggests Beckett either fabricated the return claim or failed to maintain required shipping records — both scenarios constitute gross negligence or fraud

**61.** Beckett's Customer Service Response

"The 1 card order, Invoice 287207, was shipped back on 10/15/2013. The tracking number was 580351437384. Since the order was shipped over 11 years ago, FedEx will not have any records." — ZJ, Beckett Customer Service

This vague statement confirms receipt of the Plaintiff's card but fails to prove return or delivery. No shipping receipt, scan history, or proof of delivery was provided.

## 35. Contradictions and Recordkeeping Failures

- Two different **receipt dates** listed: October 10 and October 11, 2013.
- No tracking metadata.
- No signed proof of return delivery.
- **No appearance of the card in Beckett's population report.**

## Beckett's Failure to Communicate

### 36. Escalation Attempts Ignored

The Plaintiff repeatedly requested escalation to Beckett's legal department and upper management but **received no reply**.

### 37. Broken Internal Systems

Emails to Beckett's Authentication Department **bounced back** with "mailbox full" errors, indicating serious customer service breakdowns.

### 38. Order #302678 Confusion

While initially stating that no submission was found under the Plaintiff's email, a different Beckett employee **confirmed the order existed** — highlighting internal miscommunication.

## Legal & Public Response

### 39. Plaintiff's Formal Notices

- Sent multiple emails to legal and customer service departments.
- Issued a **Formal Preservation Notice** demanding Beckett preserve all relevant digital and physical records.
- No response was received, violating standard corporate legal protocol.

### 40. Public Posts and Challenge to Beckett

Plaintiff posted YouTube and TikTok videos (30K+ combined views) publicly tagging Beckett and detailing the claims.

- No **cease and desist**, lawsuit, or public denial from Beckett followed. Plaintiff repeatedly called Beckett out on this. Reference Exhibits X,Y,Z
- Beckett's attorney, Ms. Anya Goldin, has stated that Beckett "cannot substantiate the claims" I have made and insists the card was received on October 11, 2013, and returned via FedEx on October 15, 2013. They further assert the card was not graded because it was deemed inauthentic. Reference Exhibits X,Y,Z

- Plaintiff posted Ms. Goldin's letter with a caption stating: "If this is what you stand by, make it public and sue. Oh wait — you can't, because it's truth." Reference Exhibits X,Y,Z

41. **Defendant's Failure to Dispute Time-Stamped Evidence"**

   "Despite Plaintiff's presentation of clear, time-stamped, and publicly documented evidence of Defendant's destruction and concealment of relevant evidence, Defendant has failed to contest or rebut these facts. As a result, Plaintiff requests that the Court draw an adverse inference against Defendant and grant appropriate relief, including default judgment if Defendant fails to timely respond."

42. Beckett's Silence as Admission

Despite the virility and reputational risk, **Beckett has not publicly refuted the Plaintiff's claims** — potentially due to the risk of defamation counterclaims if they were to falsely deny the allegations.

   43. After 2 weeks of being undisputed publicly for 2 weeks with updates in real time, 500 x, a combination of 30k views on YouTube and TikTok. Beckett tampered with evidence on their website Where Beckett website said originally said "deemed authentic" was removed. Reference Exhibits X,Y,Z

   a. This evidence remained intact for 11 years. It wasn't until a few weeks ago that the status has changed. Why?

   b. Beckett however gave the t206 Honus Wagner a serial number, yet no grade. It is not typical of any card grading company to give a serial number to a card and with no grade. That would mean that the process hasn't been completed.

   c. Never has Beckett made any good faith attempts or even any attempts to resolve the issue of the authentic t206 Honus Wagner lost in their custody. Their only response was dismissive at best, followed by spoliation of evidence.

   d. If the alteration was merely a clerical error, why wasn't it corrected immediately when publicly exposed? If the card was shipped, why does Beckett's internal system still show it in their repository? These contradictions demonstrate bad faith, deceit, and willful misconduct;

    e. Beckett has no evidence or proof showing that the Plaintiff or the defendant have contacted each other over the passed 11 years regarding the plaintiff t206 Honus Wagner. Making discovery the day the Plaintiff found out.

    f. Suspicious Online Interaction and Possible Intimidation Attempt

    g. Plaintiff was contacted online by an anonymous individual offering a hypothetical settlement and threatening legal retaliation. While Plaintiff cannot confirm this person's affiliation with Beckett, the timing, specificity, and subsequent deletion of the account raise the possibility of coordinated intimidation."

44. The Plaintiff does not know if this person had any real connection to Beckett, but the timing, specificity, and tone of their comments were deeply concerning. It appeared to be either a bizarre attempt to intimidate the Plaintiff or a sign that someone with knowledge of the situation was attempting to interfere or manipulate the plaintiff response. This incident, while unverified, only adds to my concerns about how this matter is being handled and underscores the need for documentation and transparency moving forward.

IV. CLAIMS FOR RELIEF

*COUNT I – CONVERSION*

    45. Plaintiff realleges and incorporates by reference all prior paragraphs.

    h. Plaintiff entrusted Beckett with a rare and extremely valuable T206 Honus Wagner baseball card in 2013 for grading/authentication.

46.. Beckett accepted possession of the card, acknowledged receipt, and retained custody of it.

47. Beckett has failed to return the card to Plaintiff or provide evidence of proper shipment.

48. Plaintiff has demanded return of the card, and Beckett has refused or failed to comply.

49. Beckett's unauthorized retention and disposition of the card constitutes unlawful conversion.

50. Plaintiff has suffered damages exceeding $3,000,000, including but not limited to loss of property, market value appreciation, and emotional distress.

*COUNT II – BREACH OF BAILMENT*

51. Plaintiff realleges and incorporates all prior paragraphs.
. 52. A bailment relationship was formed when Plaintiff delivered the T206 Honus Wagner card to Beckett.

53 Beckett, as bailee, had a duty to safeguard and return the item upon completion of the services.
. 54. Beckett breached that duty by failing to return the card or provide proof of its disposition.
. 55. Plaintiff has suffered substantial financial harm as a direct result.

56. Plaintiff and Beckett entered into a contract when Beckett accepted the card and fees for grading/authentication.

57. . Beckett breached this contract by failing to return the card or provide grading documentation.

58. Plaintiff relied on Beckett's services and was denied the benefit of the bargain.

59. Damages exceed $7,000,000, based on the fair market value of the card and lost opportunities.

COUNT V – NEGLIGENCE

60. Beckett owed a duty of care to safeguard items submitted for grading.

61. Beckett breached that duty by misplacing, losing, or otherwise mishandling Plaintiff's property.

62 . Plaintiff's injury and loss were the direct and proximate result of Beckett's negligence.

63. Plaintiff is entitled to compensatory damages.

COUNT VI – FRAUDULENT CONCEALMENT

64. Beckett knew or should have known that Plaintiff's card had been marked "Deemed Authentic."

65. Beckett failed to notify Plaintiff and instead altered internal records after public exposure.

66. Beckett's concealment of these facts was intentional and in bad faith.

67. Plaintiff reasonably relied on the belief that the card was inauthentic due to lack of communication.

68. The statute of limitations should be tolled under the discovery rule.

69. Plaintiff seeks compensatory and punitive damages.

**INJUNCTIVE RELIEF**
70. Plaintiff seeks a court order requiring Beckett to:
a. Search its facilities for Plaintiff's card.
b. Produce all internal documentation related to submission #287207 and card #302678.
c. Refrain from altering any further records.
81. Plaintiff will suffer irreparable harm without court intervention.

V. DAMAGES

82.. Plaintiff has suffered damages including but not limited to:

- Loss of a T206 Honus Wagner card valued conservatively between $7,500,000 and $25,000,000+ As of June 1, 2025 a Honus Wagner t206 sold for 7.25 million. The "Connecticut Honus Wagner T206" card is up for auction, sale date June 21, 2025 this card already gotten bids up to 3.29 million, and is expected to sell at just below 8 million.

- Emotional distress;

- Reputational harm;

- Financial loss from loss of property and future expected value;

- Costs of legal and public outreach.

83. The T206 Honus Wagner card is conservatively valued between Authentic/Restored copy at 2,000,000 and a PSA 8 valued at $50,000,000.

84. Plaintiff's card never received a final grading score. As a result, the card's determined market value cannot be verified through standard grading databases.  A Wagner card sold for $7.5 million recently. While another card referred to as the "John D" was appraised at $25,000,000. Plaintiff therefore seeks damages at the high end of that range, consistent with the card's potential value had it been professionally graded and preserved."

85. Plaintiff suffered reputational harm, severe emotional distress, and significant financial loss.

86. Loss of a card valued in the millions of dollars

87. Emotional distress

88. Reputational harm

89. Costs of public and legal outreach

Claim for Punitive Damages

90. Plaintiff requests punitive damages in an amount to be determined at trial, based on Defendant's intentional concealment, gross negligence, and reckless disregard for Plaintiff's rights.

**Reservation of Rights to Amend Complaint**

91. Plaintiff reserves the right to amend this Complaint should additional facts or evidence supporting further claims arise during discovery.

VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant the following relief, individually or in combination, as it deems just and proper:

92. Order the return of the original T206 Honus Wagner card submitted under Invoice ID 287207 / Job ID 302678, or, if the original card cannot be located or returned, an alternate T206 Honus Wagner card of equivalent value as determined by the Court or through appraisal.
93. Acknowledge that Plaintiff made good-faith efforts to resolve this dispute prior to filing, which were ignored by Defendant
94. Remind Defendant that, pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, an answer or other responsive pleading must be filed within 21 days after service of the summons and complaint. Plaintiff respectfully requests that no

continuance or extension of time to respond be granted absent a showing of good cause.

95. Plaintiff respectfully requests that the Court decline to grant any motion to dismiss filed by Defendant absent a compelling showing of good cause. Given the egregious nature of the alleged misconduct, spoliation of evidence, and Defendant's failure to respond to pre-litigation efforts, Plaintiff asserts that the interests of justice require this case to proceed on its merits rather than be resolved through procedural avoidance.

96. Plaintiff has reason to believe that a T206 Honus Wagner card, now graded by SGC and appraised at $25,000,000, may potentially be the same card Plaintiff submitted to Defendant approximately 11 years ago, which Defendant lost and has never accounted for. Defendant has failed to produce documentation, proof of return, or any explanation regarding the card's disappearance. The Wagner card now in public circulation emerged suddenly in 2021, with claims that it had been kept in a safety deposit box for "45 to 50 years," yet no documentation has been provided to substantiate this range, nor is there any clear explanation as to why such a broad and uncertain timeframe exists if the card had truly been stored under known family circumstances. The card has been referred to publicly as the "John D. Wagner" card, allegedly named after a prior owner, yet published sources make no effort to establish how "John D. Wagner" is connected to the card. Public records show that John D. Wagner died in either 1988 or 1989, which would suggest the card had been stored for approximately 33 to 34 years prior to resurfacing — significantly less than the claimed 45 to 50 years. As current owner Steve Lichtman acknowledged, "This card was on nobody's radar. It was on no website. No one had seen it. Literally, it just came out of thin air" (cllct). Plaintiff does not assert with certainty that this is the same card, but asserts that these ambiguities — combined with Defendant's failure to account for the card submitted by Plaintiff — raise legitimate and unresolved questions regarding the card's origin.

97. Because Beckett destroyed the chain of custody and failed to preserve records or images, they lost the ability to credibly dispute the identity of the T206 Wagner that resurfaced in 2021

98. Order a court-supervised examination and investigation of any T206 Honus Wagner cards graded and/or submitted to/by Beckett since 2012, including but not limited

to the $25 million 'John D. Wagner' card, to determine whether the Plaintiff's card can be identified among them.

99. Issue subpoenas or preservation orders as necessary to obtain chain-of-custody records, appraisal documents, and provenance disclosures from any current holders of such cards, including the card referred to as the 'John D. Wagner' card

100. Enter judgment in favor of Plaintiff and against Defendant. Based on the merits of the case and the Defendant's spoliation of evidence, including but not limited to the removal or alteration of digital records, failure to preserve key documentation, and refusal to provide an accounting or return of Plaintiff's submitted T206 Honus Wagner card.

101. That the Court direct Beckett or relevant parties to disclose any chain-of-custody documentation and internal communications regarding the subject card;

102. • That the Court refer the matter to appropriate government agencies (e.g., FBI, IC3, USPIS) for further investigation into spoliation and potential unlawful conversion of property;

103. • That Plaintiff be awarded damages in the amount of $25,000,000, or in the alternative, be restored rightful ownership and possession of the subject card graded by SGC;

104. Default Judgment (Rule 55(b)(2)) if the Defendant does not respond.


105. Argument for Damages Due to Spoliation

106. Due to Defendant's spoliation of critical evidence — specifically, the disappearance or alteration of Plaintiff's T206 Honus Wagner card after it was initially documented as "deemed authentic" — Plaintiff is unable to determine its final market value through normal channels. As a result, Plaintiff respectfully asks this Court to award damages consistent with the highest known valuation of T206 Wagner cards. One such card, referred to in media reports as the "John D" Wagner, was appraised at $25,000,000. Plaintiff contends that, but for Defendant's destruction of evidence and conflicting internal records, a similar valuation may have applied to Plaintiff's card.

107. The Court should not allow the Defendant to benefit from its misconduct. Under well-established precedent, spoliation of evidence that prevents a party from establishing damages may justify awarding the high end of a potential value range. In this instance, Plaintiff's ability to prove exact damages was irreparably harmed by

Defendant's actions. Therefore, Plaintiff respectfully requests that the Court enter a default judgment in the full amount of $25,000,000.

108. Award punitive damages for malicious conduct, fraudulent concealment, and egregious spoliation of evidence;

109. Impose appropriate sanctions, including default judgment, based on the severity of Defendant's tampering with digital and public records, removal of the phrase "deemed authentic," and failure to comply with its preservation obligations;

110. Recognize that on May 25th, 2025, Plaintiff publicly tagged Beckett Collectibles in a widely viewed post showing clear photographic evidence of record alteration and directly challenged Beckett again to respond or refute the claim. Despite being placed on public notice again, Beckett offered no denial, no clarification, and no response—strongly supporting the conclusion that the spoliation was intentional, egregious, and remains undisputed;

111. Declare that default judgment is warranted, given the implausibility and inconsistency of Beckett's conduct. If the card was "inauthentic," why wasn't the Plaintiff promptly informed or the item returned?

112. Refer Beckett's legal counsel for disciplinary review and potential disbarment if the Court finds that they knowingly participated in or facilitated any misrepresentation, obstruction, or spoliation of evidence;

113. Award Plaintiff the costs of this action, including court fees and legal expenses;

114. Grant such other relief as the Court deems just and proper.

115.    Rule 55(b)(2)

"Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff requests that the Court enter default judgment…"

116.    Pre-Judgment Interest

Award Plaintiff pre-judgment interest from the date of submission of the card until judgment is rendered…"Respectfully submitted,

117.    In the event Defendant is unable to satisfy any judgment entered in favor of Plaintiff, Plaintiff requests that the Court consider ordering an equitable remedy, including but not limited to the transfer of a controlling or partial interest in Beckett Collectibles, LLC or any affiliated entity, sufficient to satisfy the value of damages awarded. Plaintiff asserts that such relief is warranted given the egregious nature of the alleged conduct and the significant market value of the wrongfully withheld or unaccounted-for property.

118.    Order a full and independent audit of Beckett Collectibles' grading, intake, and recordkeeping systems as they relate to the Plaintiff's submissions, including but not limited to the card submitted under Invoice ID 287207 / Job ID 302678 and any related metadata, photographic records, internal logs, or chain-of-custody documentation.

119.    Issue a permanent injunction prohibiting Defendant from destroying, altering, concealing, or deleting any records, photos, grading notes, or metadata relating to the Plaintiff's submitted cards or any T206 Honus Wagner card graded by Defendant or its affiliates.

120.    Appoint a neutral, court-approved expert or special master to examine any disputed T206 Honus Wagner cards graded by Defendant since 2012 to determine whether there is credible evidence linking any such card to Plaintiff's original submission.

121.    Order Defendant to publicly correct or retract any prior statements made by Beckett Collectibles that omitted, denied, or obscured the existence of Plaintiff's original submission of a T206 Honus Wagner card and/or failed to disclose the subsequent disappearance of said card.

122.    Order the parties to participate in a court-supervised mandatory settlement conference within 30 days of the Court's order to explore potential resolution and avoid further prejudice to Plaintiff.

123.    Refer this matter to the appropriate state Attorney General and/or the Connecticut Department of Consumer Protection for investigation into Defendant's handling of submissions, authenticity determinations, and record alteration.

124.    Award pre-judgment interest on the lost value of the Plaintiff's submitted T206 Honus Wagner card, accruing from the original submission date in 2012 to present, as compensation for the time-value loss of Plaintiff's property.

125. Impose an equitable lien on Defendant's assets, including but not limited to any rights, ownership interests, intellectual property, or digital databases, to secure Plaintiff's potential recovery of judgment or settlement funds.
126. Order the return of all cards submitted under Invoice ID 287207 / Job ID 302678 that have not yet been returned, along with certified copies of all related grading documentation, photos, and grading notes in their original unaltered format.
127. Refer the matter to the Texas Attorney General, Federal Trade Commission (FTC), and Internet Crime Complaint Center (IC3) for further investigation and enforcement.

123. Award Plaintiff monetary damages in the amount of $25,000,000, consistent with the high-end appraised value of a comparable T206 Honus Wagner card (specifically the "John D." card), due to Beckett's spoliation of records, inconsistent statements regarding authenticity, and the resulting inability to properly identify or recover Plaintiff's original submission.

124. Alternatively, appoint a neutral, court-approved expert or special master to examine the "John D." T206 Honus Wagner card and any other comparable cards graded by SGC or any other grading service since 2012, to determine—through forensic analysis, provenance research, and historical grading trends—whether Plaintiff's card could have been misidentified, regraded, or transferred under a different identity.

125. Refer this matter for formal investigation to:

1. The Texas Attorney General (due to Beckett's business operations in Texas),

2. The Federal Trade Commission (FTC) (for deceptive business practices),

3. The Internet Crime Complaint Center (IC3) (for potential mail fraud or cybercrimes), and

4. Any other appropriate state or federal agency,

Given the circumstances surrounding the lost card, the alleged data manipulation, the emergence of a high-value Wagner card of unclear origin, and Beckett's failure to provide photographic or grading documentation.

Benjamin Washington, Pro Se Ligitant

*[signature]*

84 Bannon St Torrington CT 06790

Benwashington318@gmail.com

860-806-1982